STATE OF WEST VIRGINIA

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.J. III**

**No. 19-0151** (Roane County 18-JA-43)

**MEMORANDUM DECISION**

Petitioner Father J.J., by counsel Andrew Vodden, appeals the Circuit Court of Roane County's January 7, 2019, order terminating his parental rights to J.J. III.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Ryan M. Ruth, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his post-adjudicatory improvement period and his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner engaged in domestic violence that "resulted in substantial emotional trauma to the [child]." The DHHR alleged that the mother and the child recounted instances of domestic violence between the parents, including an event during which the child attempted to intervene by striking petitioner. According to the DHHR, the child's grandmother stated that she witnessed petitioner being physically violent with the child. Additionally, the DHHR alleged that the mother and child lived in deplorable conditions in a home with "holes in the floor[,] . . . broken windows, exposed

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

wiring, [and] excessive clutter" and that petitioner failed to protect the child from these conditions. Petitioner waived his preliminary hearing.

In September of 2018, petitioner stipulated to the allegations of abuse and neglect. Petitioner admitted that he failed to protect the child from the conditions in the home and that the child had been subjected to domestic violence.[2] Upon petitioner's admissions, the circuit court adjudicated him to be an abusing parent and the child to be an abused child.

The circuit court held a dispositional hearing in October of 2018 and granted petitioner a post-adjudicatory improvement period. The terms of the improvement period included participation in adult life skills and parenting classes, random drug screening and a substance abuse evaluation through the Mid-Ohio Valley Day Report Center ("DRC"), and domestic violence classes. Later in October of 2018, the DHHR filed a motion alleging that, prior to the initiation of petitioner's improvement period, he refused to comply with the policies of the DRC and was suspended from that program. Further, the DHHR alleged that petitioner continued to refuse to comply with the policies of the DRC after the circuit court granted him an improvement period. Consequently, the DHHR moved to terminate petitioner's post-adjudicatory improvement period and his parental rights due to his failure to comply with the terms of his improvement period.

In November of 2018, the circuit court held a hearing on the DHHR's motion and heard testimony from a DRC representative that was consistent with the motion. The representative gave examples of petitioner's noncompliance, such as failing to appear for drug screening without a valid excuse and refusal to produce his prescription medications and to complete necessary paperwork. The representative testified that petitioner's compliance with the DRC's policies had lessened further since he was granted an improvement period. The representative explained that petitioner missed eight opportunities to drug screen in a one-month period and tested positive for methamphetamine three times. Further, the representative testified that the DRC's policy requires the participant to sign and acknowledge positive drug screen results, which petitioner refused to do before and after the initiation of his improvement period. Following this testimony, petitioner moved to continue the hearing in order to receive the results of his parental fitness evaluation. Upon the DHHR's motion to suspend petitioner's services, the circuit court suspended services with the DRC and noted that supervised visitation with the child would be suspended due to petitioner's inability to provide negative drug screen results.

Later in November of 2018, the circuit court held the final dispositional hearing, and petitioner's parental psychological examination was admitted into evidence without objection. Petitioner testified that, after the initiation of his improvement period, the DRC requested that he sign his positive drug screen results. Petitioner testified that he refused because he thought he was restarting the service and that it should not be required. Petitioner submitted that he now understood the requirements and would comply with the DRC in the future. Petitioner denied that he needed long-term inpatient drug treatment as recommended in his parental fitness evaluation. The circuit court found that petitioner's psychological evaluation indicated his psychological profile was "extremely defensive" and that, during the evaluation, petitioner attempted to

---

[2]Although not alleged in the petition, petitioner also admitted that he received controlled substances from multiple doctors and medical facilities.

2

rationalize and minimize his responsibility for the abuse and neglect of the child. The evaluation provided that petitioner's results "suggested the presence of long-term maladaptive personality traits that would not be amenable to short-term therapy." Petitioner's prognosis for improved parenting was considered "extremely poor." Ultimately, the circuit court found that petitioner failed to fully participate in the terms of his improvement period. Further, based on petitioner's noncompliance with services, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the welfare of the child. Accordingly, the circuit court terminated petitioner's parental rights by its January 7, 2019, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his post-adjudicatory improvement period and his parental rights. Petitioner stresses that the circuit court found that he was likely to fully participate in an improvement period during the first dispositional hearing, but, after only nine days, entertained the DHHR's motion to terminate his improvement period and parental rights. Petitioner asserts that the evidence the DHHR presented in support of its motion to revoke his parental rights occurred prior to the granting of his improvement period and was known to the circuit court at the time it granted him an improvement period.

Petitioner fails to acknowledge that he failed to comply with services after the initiation of his improvement period. West Virginia Code § 49-4-610(7) provides that "the [circuit] court shall terminate any improvement period granted pursuant to this section when the court finds that [the parent] has failed to fully participate in the terms of the improvement period." It is clear from the record that petitioner failed to participate in services with the DRC as required by the terms of his

---

[3]According to the parties, the mother is currently participating in an improvement period and retains her parental rights. The permanency plan for the child is reunification with his mother with a concurrent plan of adoption by his maternal aunt.

improvement period. Although petitioner is correct in stating that the DHHR presented evidence that he failed to comply with these services prior to the initiation of his improvement period, the DHHR also showed that petitioner continued to disregard these services after the improvement period began and, therefore, confirmed petitioner's pattern of noncompliance with services. Petitioner argues that the only evidence the DHHR presented that indicated that he was not complying was his failure to complete required paperwork. However, the record shows that petitioner tested positive for methamphetamine on the day his improvement period was granted and missed multiple opportunities to drug screen thereafter. Therefore, we find no error with the circuit court's termination of petitioner's post-adjudicatory improvement period.

Further, this same evidence supports the termination of petitioner's parental rights. West Virginia Code §49-4-604(b)(6) provides that circuit courts are to terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the child." West Virginia Code § 49-4-604(c)(3) provides that situations in which there is "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" include one in which the abusing parent has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Further, this Court has held

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Here, petitioner failed to follow through with a reasonable family case plan, as evidenced by his noncompliance with the DRC and those services. Even more concerning, the psychological examination provided that petitioner minimized his responsibility for the abuse and neglect of the child during his interview. Further, petitioner denied that he needed long-term substance abuse treatment, despite numerous drug screen results that were positive for methamphetamine. Due to petitioner's noncompliance with services and his minimization of issues related to the abuse and neglect, we find no error in the circuit court's findings that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the child's welfare. Accordingly, the circuit court did not err in terminating petitioner's parental rights.

Finally, because the matter concerning the mother is ongoing in the circuit court, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 7, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison